Filed 7/13/26  In re M.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.L., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K.L.,<br><br>    Defendant and Appellant. | D087751<br><br>(Super. Ct. No. NJ016093) |

APPEAL from an order of the Superior Court of San Diego County, Alejandro Morales, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Katie Abajian, Deputy County Counsel, for Plaintiff and Respondent.

Leslie A. Barry, under appointment by the Court of Appeal, for Minor M.L.

Father K.L. appeals from the juvenile court's February 27, 2026 disposition order allowing Minor M.L. (born in 2015) to remain in the physical custody of Mother S.Z. under a family maintenance plan. Father contends Mother's failure to believe Stepfather B.Z. had sexually abused Minor compels a finding on appeal that there were "no reasonable means" to protect the child other than her removal from Mother's care. (Welf. & Inst. Code, § 361, subds. (c)(1) and (4).) We disagree.

From the start of dependency proceedings, Mother has complied with *all* the juvenile court orders. These orders included that (1) Stepfather move out of the home and have no contact with Minor and (2) Mother and Minor participate in court-approved services recommended by the San Diego County Health and Human Services Agency, including those related to child sexual abuse. With these and other conditions in place, the court—with the Agency's agreement—found Minor could safely remain in Mother's physical custody. Because clear and convincing evidence does not compel a different conclusion, we affirm the disposition order.

I.

A.

In early November 2025, the Agency received an emergency referral regarding Minor's disclosure of sexual abuse by Stepfather. During an Agency interview, Minor stated Stepfather touched her "private part (vagina) and her bottom over and under [her] clothing for the last four years." Minor repeated the details of the abuse during a forensic interview. She added that (1) Stepfather would also ask her to sit on his lap and "move his private part up and down" on her bottom "while touching her vagina," (2) the abuse

2

occurred when Minor's two older siblings (then aged 16 and 17) were in their rooms or at school and while Mother was at work, and (3) Minor was "scared" to disclose the abuse because she did not want Mother or Stepfather "to get in trouble."

Mother denied Minor had made any prior disclosures of sexual abuse, including by Stepfather, and questioned whether Stepfather was "capable" of such conduct. Mother initially refused therapy services for herself and Minor, explaining the child could get counseling through their church. When the Agency recommended a safety plan requiring Stepfather to move out of the home, Mother told the Agency he paid "the bills" and questioned whether Minor was being truthful about the abuse. Mother noted Minor recently had lied to school officials about the lack of food at home after fainting at school.

Mother ultimately agreed to a safety plan in which Stepfather would live out of the family home for about a week. She later refused, however, to extend that plan, agreeing instead to a new safety plan offered by the Agency that allowed Stepfather to remain in the home on the condition he was never alone with Minor.

During a mid-November child and family team meeting, Mother claimed Stepfather's sexual abuse "did not happen." In a follow-up interview, Mother told the Agency that Minor's allegations of sexual abuse were a "'complete misunderstanding,'" as the child now was reporting Stepfather had only made her feel "uncomfortable."

Father, who was married to Mother between 2004 and 2023, expressed concern for Minor's safety. It stemmed from Stepfather's continued living in the same home as Minor, and Mother not believing the child's abuse allegations. To address this concern, Father told the Agency he wanted placement as the noncustodial parent.

B.

In its November 21, 2025 petition under section 300(d), the Agency alleged that, beginning in about 2023 to the present, Stepfather "sexually abused" Minor, "including using his hand to touch the child's vagina and buttocks both on top of and underneath the child's clothing and has made the child touch his genitals with her hand over his clothing"; and Mother "does not believe said sexual abuse occurred or that the child is in danger of being sexually abused by [Stepfather] and that the child's disclos[ures] of sexual abuse are a misunderstanding." The Agency recommended Minor remain in Mother's physical custody on the condition Stepfather move out of the home and have no contact with the child.

C.

At the November 25, 2025 detention hearing, Mother testified she would agree to Stepfather's removal from the home, if ordered by the juvenile court, because her "priority" was for Minor to remain in her care. Mother, however, continued to believe Stepfather had not sexually abused Minor. According to Mother, she and Minor were together "[a]ll the time" and the child had a "lying problem." Mother also agreed to participate in the Agency's referrals and court-approved programs designed to assist her in learning about the sexual abuse of children.

The juvenile court ordered Minor detained with Mother on the condition Stepfather move out of the home and have no contact with the child. The court noted Minor remained consistent in her disclosure, found there was a big difference between a child being "misunderstood" and not being believed, and expressed "shock[]" the Agency had agreed to allow Stepfather to remain in the home as long as he and Minor were never alone. The court nonetheless found Mother had complied with both safety plans;

4

trusted her to follow the court's orders going forward, even if she did not believe Minor's disclosure; and reminded Mother there would be consequences—including removing Minor from her physical custody—if she violated any of its orders.

As to Father's request for placement, the court found Minor already had suffered "something very serious and very traumatic" due to the sexual abuse and there was a substantial risk of harm to Minor if the court removed her from Mother's care and placed her in Los Angeles County with Father, as Minor barely knew him. The court ordered the Agency to (1) assess Father for possible future placement and (2) facilitate liberal, supervised visitation between him and Minor.

The court then issued a temporary restraining order, which included a no-contact order between Minor and Stepfather.

D.

In its December 2025 jurisdiction/disposition report, the Agency recommended (1) a true finding on the petition, (2) Minor remain in Mother's care, and (3) Father receive enhancement services. During the reporting period, Mother disclosed Stepfather had moved out of the home, as ordered. Mother agreed to participate in services offered by the Agency for "non-protective parents involving sexual abuse" and stated her long-term goal was "'to reunite the family,'" though she recognized this was "'frowned upon'" by the court.

Regarding Father, Mother disclosed she had left the marriage as a result of his (1) physical and verbal domestic violence; (2) substance abuse, which included methamphetamine and cocaine use; and (3) infidelity. Since July 2019, she has had sole physical and legal custody of Minor and her

5

siblings, with Father having supervised visitation. About two months after Mother obtained sole custody, Father stopped visiting the children.

E.

In its February 2026 addendum, the Agency reported Minor told her therapist about Stepfather's sexual abuse and his moving out of the home, and how this allegedly was "bad news" because Father was "back" and Minor wanted nothing to do with him. Minor also reported her oldest sibling celebrated her 18th birthday and had moved out of their home the next day. Father confirmed Minor's sibling was now living with him in Los Angeles County.

The Agency reported Mother had begun parenting classes and therapy; there had been no contact between Stepfather and Minor since being ordered out of the home, which Mother also confirmed; and Minor was refusing to talk to or see Father.

Father reported that, according to Minor's oldest sibling, Mother and Stepfather were planning to move the family to Texas once dependency proceedings concluded.

F.

At the February 27, 2026 contested adjudication/disposition hearing, the juvenile court issued a three-year juvenile restraining order against Stepfather, finding by a preponderance of the evidence that he had sexually abused Minor. The court found Minor credible, as her statements of abuse had been "consistent throughout the process."

Despite the issuance of the JRO, the Agency expressed "strong concerns" about Mother's ability to protect Minor from further abuse due to her (1) not believing Minor's disclosure, (2) allegedly isolating the maternal and paternal families from her own family, and (3) statements about wanting

6

to move to Texas with Stepfather. The Agency nonetheless found insufficient evidence to support Minor's removal from Mother's physical custody (1) "as long as the stepfather is out of the home" and (2) Minor continued to express feeling safe in her care. With services, the Agency hoped Mother would learn to support her daughter, including by believing Minor's claim of sexual abuse by Stepfather.

Father disagreed with the Agency's recommendation and believed Minor should be removed from Mother's care and placed with him. He noted the child would then be living with her oldest sibling and his family. He admitted he had not seen Minor since 2019 because his life then was "a wreck," as he was battling a yearslong addiction to methamphetamine.

The juvenile court admitted the stipulated testimony of Minor based on questions posed by Father. Minor testified she did not want to see Father "at all," even if her oldest sister was present.

As to jurisdiction, the court found by a preponderance of the evidence that the allegations in the petition were true. Regarding disposition, while "concern[ed]" by Mother's denial that Stepfather had sexually abused Minor, the court found it was not a basis for removal because Mother had (1) followed the court orders, including that Stepfather move out of the home and have no contact with Minor; (2) enrolled herself in a court-approved treatment program and Minor in therapy, as recommended by the Agency; and (3) not "coached" Minor after her disclosure of the sexual abuse. Like the Agency, the court noted that with services, Mother hopefully would become more protective of Minor, including by believing her sexual abuse disclosure.

The juvenile court also ordered (1) family maintenance services for Mother; (2) for her to make Minor available to visit with the child's oldest sibling; (3) the Agency to make unannounced visits to Minor's home at least

7

twice a month, both to check on her wellbeing and to make sure Mother continued to follow the court's orders; and (4) enhancement services for Father, with the goal of developing a permanent relationship with Minor. The court also told Mother to expect unannounced visits by Minor's counsel and to facilitate those visits as well.

II.

Father contends the juvenile court erred when it refused to remove Minor from Mother's physical custody. (§ 361(c).) We are not persuaded.

A.

A juvenile court has "broad discretion" to determine a child's best interest when crafting a disposition order. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.) The court, however, may not remove a child from a parent's custody unless it finds, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361(c)(1).) In determining "reasonable means" under this subdivision, the court must consider "[t]he option of removing an offending parent . . . from the home" and "[a]llowing a nonoffending parent . . . to retain physical custody as long as that parent . . . presents a plan acceptable to the court demonstrating that they will be able to protect the child from future harm." (§ 361(c)(1)(A), (B).)

Father also relies on section 361(c)(4), which requires the court to remove a child from a parent's physical custody if it finds, by clear and convincing evidence, that the child or the child's sibling "has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a

8

parent . . . or other person known to their parent, and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor."

Whether under section 361(c)(1) or (c)(4), removal *requires* an independent finding, by clear and convincing evidence, that "no reasonable means" exist to protect a dependent child without depriving the parent of custody. Because this statutory language is not ambiguous, "we presume the Legislature meant what it said, and the plain meaning of the language governs." (*In re B.L.* (2012) 204 Cal.App.4th 1111, 1116 [cleaned up].)

B.

When a "statute is silent on which party bears the burden of proof" when a social services agency makes a recommendation and a "party opposes that recommendation," as was the case here, the burden is on that party to make the requisite statutory showing. (See *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1159, 1162–1163.)

Here, the Agency did *not* seek to remove Minor from Mother's physical custody, but Father did. As a result, and as Father recognizes, "the question for a reviewing court becomes whether the evidence *compels* a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, italics added.) To satisfy his burden on appeal, Father therefore must show that the "evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (See *ibid.*)

C.

1.

Father falls short of satisfying his burden on appeal.

The record here shows Mother's "priority" was for Minor to remain in her care, despite her disbelief that Stepfather had sexually abused the child. As noted by the juvenile court, Mother had complied with all of its orders, including (1) requiring Stepfather to move out of the home following the detention hearing; (2) ensuring Stepfather had no-contact with Minor as set out in the JRO; (3) communicating with Stepfather only outside of Minor's presence; (4) enrolling herself and Minor in court-approved programs recommended by the Agency, including services for sexually abused children; and (5) not discussing the case with Minor and ensuring Minor's siblings also did not discuss the case with Minor. Thus, despite not believing Minor's allegations of abuse by Stepfather, the record shows Mother's *actions* "since day one" were to keep Minor in her care, consistent with her telling the court that was "all that matter[ed]."

The record also shows the juvenile court took additional steps to ensure Minor's safety and best interest, as described in detail above, through unannounced Agency visits and warning Mother of the consequences of violating any of its orders.

On this record, Father has not convinced us clear and convincing evidence compels finding, either under subdivision (c)(1) or (c)(4) of section 361, that there were "no reasonable means" to protect Minor without removing her from Mother's physical custody. "'[O]ur dependency system is premised on the notion that keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interests.'" (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 810.)

2.

Relying on *In re Alexzander C.* (2017) 18 Cal.App.5th 438 and another case for support, Father nonetheless contends Mother's denial of Minor's sexual abuse allegations placed Minor in "substantial danger" of further abuse.  (See § 361(c)(1).)

In *Alexzander C.*, the parents claimed they were merely "drug users, not abusers, and their use [of methamphetamine] had no adverse impact on the children."  (*Alexzander C.*, 18 Cal.App.5th at p. 445.)  The juvenile court disagreed and removed the two children, then aged 14 and 12, from the parents' physical custody due to the parents' positive drug tests.  (*Id.* at pp. 445, 450.)  The father appealed.  In affirming the disposition order, *Alexzander C.* concluded substantial evidence supported the juvenile court's finding that the father had a "methamphetamine use disorder," which placed the children at risk of harm.  (*Id.* at p. 447.)  It rejected the father's contention that he merely "used" drugs, noting he admitted to the child welfare agency he had used methamphetamine "continuously for more than 25 years," including up to four times a day recently.  (*Id.* at pp. 447–448.)  The court of appeal concluded, first, the "message" the father sent to his children was that methamphetamine use "did not present a problem" and, second, the children likely had access to the drug based on the inference the parents used it multiple times a day in the home.  (*Id.* at p. 450.)

*Alexzander C.* is distinguishable from the instant case.  Notably, the juvenile court there found the children were at risk of harm and removed them from the parents' physical custody due to their ongoing methamphetamine use.  (*Alexzander C.*, 18 Cal.App.5th at pp. 451–452.)  In contrast, the juvenile court here reached the opposite conclusion, finding the

11

evidence insufficient to warrant Minor's removal from Mother's care due to, among other things, safeguards it put in place to protect the child.

*Alexzander C.* is also distinguishable because the father there *increased* the risk of harm to the children when he allowed the mother to move back into the home and care for them when he was at work, despite his acknowledgement she was still using drugs and had failed to reunify with the children in a prior dependency. (*Alexzander C.,* 18 Cal.App.5th at p. 450.) Unlike the father in *Alexzander C.*, Mother here has taken steps to *decrease* the risks to Minor by following the juvenile court's orders, engaging in Agency-sponsored services, and enrolling Minor in her own services including therapy. *Alexzander C.* therefore does not assist Father.

Father also relies on *In re R.V.* (2012) 208 Cal.App.4th 837. There, this court affirmed the juvenile court's disposition order removing a three-year-old child from the mother's custody after the child's 10-year-old half-sister disclosed that the father had sexually abused her. (*Id.* at pp. 840–841, 849.) We concluded evidence supported the finding that the three year old was at substantial risk of also being sexually abused by the father because the father bathed naked with the child and kissed him on the mouth; the child was often in the room when the father sexually abused the child's half-sister; the mother admitted she "failed to attend to the children's needs" and slept a lot due to depression; the mother "acknowledged" her daughter "may" have been sexually abused by the father, although she tended to believe no such abuse had occurred; and the mother *violated* the court's no-contact order by leaving the child in the father's care. (*Id.* at pp. 841, 849.)

These facts distinguish *In re R.V.* from the current case, where the evidence established Mother had (1) followed the juvenile court's orders,

12

including abiding by the JRO; and (2) demonstrated the ability to protect Minor while in her physical custody.

3.

Finally, Father contends Mother's isolation of Minor from her paternal and maternal relatives compelled the child's removal from Mother's care. (See *In re I.W.*, 180 Cal.App.4th at p. 1528.) As noted, the Agency was concerned about Mother's isolation from other family members. But the record also shows Minor (1) was in school and had "built a community there"; (2) had several friends; (3) was enrolled in therapy; (4) would be visited at least twice a month by the Agency and also visited by her counsel; and (5) up until dependency, went to church twice a week.

That Mother and her immediate family members have not had a relationship with paternal relatives is not surprising given that she and Father divorced in 2023. And, before their divorce, Father admitted he was a "wreck" due to his yearslong addiction to methamphetamine. In addition, Father had not visited Minor for years. Even after becoming sober, Father had not returned to court to restart visitation.

As to maternal relatives, Mother informed the Agency she did not want to "burden" them, as she "used to ask them for help with the father." The record shows the Agency encouraged Mother to "increase her support network," but did not recommend removal due to Minor's alleged isolation from relatives.

We conclude no clear and convincing evidence compels finding Mother "isolated" Minor, thereby requiring the child's removal from her care. (See *In re I.W.*, 180 Cal.App.4th at p. 1528.)

### III.

We affirm the juvenile court's February 27, 2026 disposition order.

CASTILLO, J.

WE CONCUR:

BUCHANAN, Acting P. J.

KELETY, J.